UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TECHRADIUM, INC., <br>     Plaintiff <br><br> v. <br><br> FIRSTCALL NETWORK, INC., <br>     Defendant. | ) <br> ) <br> ) <br> )   CASE NO. 4: 13- cv -02487 <br> )   JUDGE LEE H. ROSENTHAL <br> ) <br> ) |

\*     \*     \*

| | |
|---|---|
| TECHRADIUM, INC., <br>     Plaintiff <br><br> v. <br><br> CITY OF FRIENDSWOOD, <br>     Defendant. | ) <br> ) <br> ) <br> )   CASE NO. 4:13- cv - 02641 <br> )   JUDGE LEE H. ROSENTHAL <br> ) <br> ) |

# DEFENDANTS' MOTION FOR AWARD OF ATTORNEYS' FEES

Pursuant to 35 U.S.C. § 285, FirstCall Network, Inc. ("First Call"), and the City of Friendswood (the "City"), Defendants in the above-captioned consolidated case, respectfully move for an award of their reasonable attorneys' fees and expenses in this case.

## Summary of Motion

The Patent Act provides that "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." 35 U.S.C. § 285. The Supreme Court recently established a flexible, discretionary framework for determining whether to award fees pursuant to this provision. *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014).

This Court has granted complete summary judgment to Defendants. Doc. 74. Each Defendant is therefore a "prevailing party" within the meaning of § 285.

Under the *Octane Fitness* framework, *see* 134 S. Ct. at 1756 & n.6, this case qualifies as "exceptional" within the meaning of § 285. Plaintiff TechRadium, Inc. ("TechRadium") pursued the lawsuit for the improper purpose of forcing the Defendants into business transactions or bolstering litigation positions without regard to the merit of the infringement claims. Positions taken by TechRadium in the lawsuit were frivolous. Key positions taken by TechRadium were at the very least objectively unreasonable. An award of fees would therefore be proper, both to compensate Defendants for expenses they never should have had to incur and to deter TechRadium and similarly-situated patentees from pursuing similarly unmeritorious patent infringement litigation.

Defendants made concerted efforts to minimize the expense of defending the consolidated lawsuits. Their total costs of defense were therefore "reasonable" within the meaning of § 285.

This Court should therefore exercise its discretion under § 285 and award Defendants their full costs of defense, as documented in the attached affidavits of defense counsel and summarized in the Affidavit of the undersigned. Exhibit A (Affidavit of B.D. Daniel); Exhibit B (Affidavit of Ryan R. Brown); Exhibit C (Affidavit of Ray Viada).

## Nature and Stage of the Proceedings

This is a patent infringement case involving messaging systems and a patent owned by TechRadium. This Court recently granted complete summary judgment to Defendants, holding (a) that as it had held in prior litigation, the claim construction advocated by TechRadium was lacking in merit and (b) that TechRadium had submitted no admissible evidence of infringement to defeat summary judgment under the correct claim construction. Doc. 74. Final judgment has not been separately issued.

2

## Issues Raised and Standard of Review

This Court must determine whether to award attorneys' fees to Defendants on the ground that this is an "exceptional case" within the meaning of 35 U.S.C. § 285. An "abuse-of-discretion standard" applies to this determination. § 285. *Highmark, Inc. v. Allcare Health M'g'ment System, Inc.*, 134 S. Ct. 1744, 1749 (2014); *accord. Octane Fitness.* 134 S. Ct. at 1755, 1756 (section 285 submits the issue to "the district court's discretion," requiring a "case-by-case exercise of [that] discretion").

## Facts Proving Why Fees Should Be Awarded

In order to assist the Court in considering the evidence supporting this motion as explained in Defendants' Argument below, Defendants have numbered the paragraphs in the following, largely chronological, statement of probative facts. These statements will be referenced in the argument as "SOF #".

<u>TechRadium's Prior Suit Against First Call Establishes the Lack of Merit in TechRadium's Infringement Positions</u>

1. TechRadium filed a previous case against First Call and other defendants, alleging infringement of messaging patents containing key claim terms identical to the key claim terms in the messaging patent asserted in this case. That lawsuit, originally filed in the Eastern District of Texas, was transferred to this Court because TechRadium is located in this District and because this Court was familiar with the issues raised by the asserted patents from other litigation involving those TechRadium patents. Docket Entry ("Doc.") 10-1 (Eastern District order of transfer attached to motion for intradistrict transfer of this case). The first transferred case was assigned Case No. 4:10-01887. Docs. 10-2, 54-11, -12.

2. Before the transfer of the prior case, First Call had discussions with TechRadium about the merits of TechRadium's infringement claims. Among other things, First Call explained that

3

its clients, the administrators of the First Call system, selected grouping information for messages over the system. Exhibit D. In other words, its system did not employ "user selected grouping information," an essential element of the patents asserted in the first lawsuit. Accordingly, First Call urged TechRadium to drop the suit against First Call. *Id.* In response, TechRadium refused either to explain the basis for its infringement claims against First Call or to discontinue its case against First Call. Exhibit E.

3. In the prior case, this Court conducted a claim construction hearing; TechRadium's in-house counsel, Mr. Vetrano, attended the hearing. Exhibit F (transcript of hearing, pp. 1-19) at 1. At the hearing, and in the presence of Mr. Vetrano, TechRadium's attorney-of-record Mr. Staples conceded that "the defendants would like to limit the term "user" to a message recipient because such a limited construction "would make it virtually impossible for any useful mass notification system to infringe the patent." *Id.* at 17, lines 4-8. In particular, Mr. Staples further that it is an "administrator" who "wants to determine to what groups messages are being sent." *Id.* at 19, lines 14-15. To establish "user selected grouping information," therefore, TechRadium had to have a construction that equated "user" with "administrator." In its claim construction ruling, however, this Court rejected TechRadium's position that the claim terms "user" and "administrator" were interchangeable. Doc. 54-11. In particular, the Court specifically construed "user" as follows: "User means an intended recipient of a message sent by an administrator." *Id.* at 2.

4. Not surprisingly, given the concession of TechRadium counsel at the claim construction hearing, the defendants in the prior case jointly moved for summary judgment of non-infringement based on the Court's claim construction. Exhibit G (cover page of motion). First Call submitted an affidavit in support of that motion, Exhibit H. Among other things, First

4

Call's President Mr. Teague swore under oath in paragraph 7 of the affidavit that under the Court's construction of a "user" as a message recipient, the First Call system did not permit "user selected grouping information." TechRadium submitted no evidence in the prior case to controvert any part of Mr. Teague's affidavit.

5. By agreed motion while the summary judgment motion was pending in the prior case, TechRadium dismissed its claims against First Call without prejudice. *See* Exhibit I. This Court then granted summary judgment in favor of Edulink, basing its conclusion on its prior construction of the term "user." Doc. 54-12. TechRadium did not appeal the summary judgment, and therefore did not appeal the Court's construction of the term "user."

TechRadium's Motivation for the Second Lawsuit

6. As contemplated by the agreed dismissal of the prior suit, TechRadium and First Call discussed a potential business combination. Exhibit J. TechRadium repeatedly asserted during negotiations that if First Call did not agree to a business combination, TechRadium would file another lawsuit. *Id.* Nevertheless, because the payment terms proposed by TechRadium were completely unacceptable to First Call, First Call discontinued negotiations. *Id.*

The Current Lawsuit Against First Call and TechRadium's Motivation for Suit

7. At this point, TechRadium knew or should have known that First Call's system did not use "user selected grouping information" under the Court's construction of "user," so that it could not prove infringement of any patent claim requiring "user selected grouping information." Nevertheless, promptly after First Call discontinued negotiations, TechRadium filed its current lawsuit against First Call alleging infringement of a related patent with "user selected grouping information" as an essential element. Doc. 1. TechRadium did not retain independent outside counsel in this lawsuit; its attorney of record is its in-house counsel Mr. Vetrano. Despite

5

(indeed, because of) this Court's familiarity with the issues likely to be raised in the new lawsuit and despite TechRadium's residence in the Houston Division, TechRadium filed its new suit in the Galveston Division.

Attempts to Avoid Expense of This Lawsuit

8. First Call did not cave in to TechRadium's economic coercion. Instead, prior to its answer date, counsel for First Call wrote counsel for TechRadium, advising that the infringement claims were wholly without merit and that First Call would seek to recover its fees and expenses if TechRadium did not voluntarily dismiss the new lawsuit. Exhibit K. In addition, the letter advised TechRadium that the punitive damage and fraud claims in the Complaint were frivolous and should be withdrawn. *Id.* And the letter asked whether TechRadium would oppose transfer to the Houston Division. In his response, Mr. Vetrano opposed transfer but made no effort to defend any of the substantive allegations made in the lawsuit. Exhibit L.

Defense Costs Are Necessitated; Unreasonable Position on Transfer

9. First Call was therefore forced to file a motion for a transfer. Doc. 10. In addition, First Call was forced to file a motion to dismiss TechRadium's claim for punitive damages as totally without merit in a patent infringement case. Doc. 11. And First Call was thereafter forced to incur costs to defend the case on the merits.

Further Evidence of TechRadium Motivation

10. In the joint case status report section inquiring about possibilities of resolution without court intervention, TechRadium confirmed that the case could be promptly resolved if First Call resumed the discontinued negotiations. Doc. 16 ¶ 15. First Call maintained its position that the lawsuit was without merit and sanctionable, and that First Call would file an early dispositive motion based on this Court's claim construction in the first case. *Id.*

6

The Lawsuit Against the City of Friendswood:

11. At the same time that it filed its response to First Call's motion for intradistrict transfer, Doc. 21, TechRadium filed suit against the City of Friendswood, also in the Galveston Division. Doc. 1 (13-02641). Once again, its attorney of record was Mr. Vetrano.

Additional Evidence of TechRadium Motivation

12. The reason for the lawsuit against the City was transparent. In its opposition to the First Call transfer motion, TechRadium relied on that lawsuit as a ground for opposing First Call's transfer motion. Doc. 21 at 3. TechRadium quickly advised the City that the case would be dismissed if Friendswood entered into a license agreement with TechRadium. Exhibit C ¶ 5. But the City declined to be coerced into paying a license to TechRadium. *Id.*

13. Judge Costa transferred both cases to the Houston Division for assignment to this Court. Doc. 32 (13-02487) and Doc. 7 (13-02641). Doc. 32. Judge Costa's rationale for granting transfer echoed the reasons for transfer of the first case against First Call: TechRadium and the City are located in the Southern District, and this Court was already familiar with the issues raised by the claims in the asserted patent.

TechRadium's Frivolous Punitive Damage Claim and Objectively Unreasonable Allegations in Support of Enhanced Statutory Damages

14. Rather than defend its patently frivolous punitive damage claim in response to First Call's motion to dismiss, Doc. 11, TechRadium obtained written consent to file an amended complaint asserting a claim for enhanced damages under the Patent Act, 35 U.S.C. § 284. Doc. 34-1. That consent, however, warned that the proposed amendment was still subject to dismissal for failure to state a valid claim. *Id.* Just as it had failed to withdraw its earlier punitive damage and fraud allegations solely at the request of First Call counsel, TechRadium forged ahead without modifying the new allegations in its First Amended Complaint. Doc. 25.

7

1490.001/5506337v1

15. First Call was therefore required to file a second motion to dismiss the offending allegations. Doc. 30. This Court granted the motion but also granted TechRadium leave to amend its claim for enhanced statutory damages. Doc. 37.

16. TechRadium's second amended complaint still did not state a valid claim for enhanced statutory damages. First Call was therefore required to file a third motion to dismiss. Doc. 43. This Court once again granted the motion, and again granted TechRadium leave to amend, but warned that it would not grant any further amendments without a showing of good cause. Doc. 50.

17. In its third amended complaint, filed on November 5, 2013, TechRadium alleged – apparently in an effort to track the proof requirements for enhanced damages established by the Federal Circuit – that First Call knew, "or so obviously should have known, that its acts infringed a valid patent." Doc. 53 ¶ 14. This allegation was, of course, conclusively contradicted by the admissions of its counsel in the first case that it would be impossible to prove infringement under this Court's established construction of "user" as a "message recipient." Correspondingly, when TechRadium opposed Defendants' summary judgment motion less than a month later, TechRadium admitted for all practical purposes that infringement could not have been either known or obvious, to First Call or anyone else, because it required a construction of the claim terms "user" and "administrator" different from this Court's construction of those identical terms in the prior case. Doc. 57 at 3-4.

Renewed Attempt to Avoid Expense of Lawsuit

18. After TechRadium's infringement contentions were served and it filed its third amended complaint, First Call again sought to avoid any further expense in the litigation. First Call counsel again wrote TechRadium counsel, contending correctly that the TechRadium claims

8

were without merit and providing notice again that First Call would seek fees and expenses if TechRadium did not voluntarily dismiss the lawsuit. Exhibit M.

<u>Objectively Unreasonable Positions on Procedural Issues</u>

19. TechRadium did not timely produce license agreements as required by Patent Rule 3-2(a)(4). When Defendants conferred on this failure, *see* Exhibit N, TechRadium still refused to comply with the Patent Rule without entry of a protective order. Entry of a protective order, however, was made unduly complicated and expensive by the shifting positions of TechRadium on the precise language of the order; after moving for an order based on the form order in the Local Rules, TechRadium later opposed such an order. *See* Docs. 41, 42, 45, 46, 47, 50, 51.

20. TechRadium did produce license agreements, but designated them as "Highly Confidential." When Defendants conferred on this improper action, Exhibit O, TechRadium refused to change the designation, Exhibit P. Again Defendants were forced to set a pre-motion conference, at which this Court directed TechRadium to change the designation to "Confidential."

21. In order to obviate the expense of claim construction charts, briefing and argument under the Patent Rules, Defendants proposed constructions of all terms as construed by this Court or as agreed by the parties in the prior case. Exh. Q. TechRadium declined, pursuing a construction of "user" contrary to this Court's claim construction in the prior case, and a construction of "administrator" different from the agreed construction in the prior case. Doc. 64.

22. After the claim construction and summary judgment records were closed, TechRadium sought discovery from Defendants. When Defendants pointed out that discovery should not proceed with claim construction and summary judgment pending, Exhibit R, TechRadium nevertheless insisted on the discovery. Defendants were therefore forced to set a

1490.001/5506337v1

pre-motion conference, at which this Court entered a stay of all discovery pending its claim construction and summary judgment rulings, Doc. 72.

Objectively Unreasonable Positions on Claim Construction

23. In this case, TechRadium openly argued for a construction of "user" different from the construction of "user" determined by this Court in the prior case, contending that "user" meant something different in the supposedly different patents involved in the two cases. Docs. 57, 64, 66. To the contrary, this Court readily concluded that "there are no material differences in the way 'users' and 'administrators' are described across the patents." Doc. 74 at 13.

24. At the claim construction hearing in the prior case, Mr. Staples as counsel for TechRadium, in the presence of Mr. Vetrano, had argued that the proposed TechRadium construction "is a quote straight out of the specification." Exhibit C at 17, lines 1-3. That argument failed in the prior case. Doc. 54-11 at 11. TechRadium nevertheless relied in this case on that same rejected logic, advocating a claim construction quoting specification language verbatim. Doc. 64 at 14. This Court was therefore forced to reject TechRadium's transparently unmeritorious argument for the same reasons it had rejected those arguments before. Doc. 74 at 12-17.

25. The crux of TechRadium's claim construction argument in this case was that if the patents in the prior cases and this Court's construction of those patents are ignored, the specification of the '729 patent at issue in this case would support a different construction of "user." *See* Doc. 64 at 29-42. To the contrary, this Court readily concluded that the "'729 Patent claims and specifications independently support recognizing a distinction between 'users' and 'administrators.'" Doc. 74 at 14. In support of the conclusions that "user" also meant "message recipient" in the '729 patent, the Court recited multiple features of the '729 specification and

1490.001/5506337v1

claim language that all supported applying the same construction to "users" in this case as the Court had applied in the prior case. Doc. 74 at 14-17.

Objectively Unreasonable Infringement Positions

26. TechRadium based its infringement argument primarily on the descriptions of grouping selection in First Call's messaging system on the First Call website. According to this Court, however, the "website makes clear that" it is the "client administrator[ ] who selects the grouping information" and "make[s] clear that it is the administrator, not the user, who decides want geographic area or region will receive messages." Doc. 74 at 17-18. In short, it has been undeniable since TechRadium's counsel honestly conceded the point in the prior case that if "user" is limited to a "message recipient," it is "impossible" for TechRadium to prove infringement by "any useful mass notification system" like that of First Call.

27. With respect to First Call's Storm Alert function, TechRadium made the frivolous argument that a selection of content to receive was a selection of grouping information, because selection of content entailed selection of "groups of information." Doc. 57 at 26. This Court rejected that argument out of hand, concluding readily that "selection of feeds to receive is not a selection of grouping information." Doc. 74 at 19.

Further Evidence of TechRadium Motivation

28. While the summary judgment motion was pending, TechRadium inquired whether First Call would resume negotiations concerning the business combination previously discussed. Exhibit S. After summary judgment was granted, TechRadium further proposed a joint dismissal of claims, on the anomalous ground that expense could be avoided. Exhibit T. Of course, TechRadium's suggestion came only after it had imposed on Defendants as much litigation

11

expense as it could before losing on the merits; and TechRadium's proposal contains an implied threat of continued expense.

## Quantification of Fees

The affidavits of defense counsel Mr. Daniel, Mr. Brown, and Mr. Viada – Exhibits A-C – verify the reasonable fees and expenses incurred by each Defendant in this case.

## Argument

Section 285 provides that the "court in exceptional cases may award reasonable attorneys' fees to the prevailing party." As the Supreme Court recently commented, the "text" of § 285 "is patently clear. It imposes one and only one constraint on district court's discretion to award attorneys' fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane Fitness*, 134 S. Ct. at 1755-56.

<u>The "Exceptional Case" Analysis Established by the Supreme Court</u>

Giving the word "exceptional" its "ordinary meaning," the Supreme Court held "that an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756; *accord*, *Highmark*, 134 S. Ct. at 1748. This Court is therefore to "determine whether [this] case is 'exceptional' in [a] case-by-case exercise of . . . discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756; *accord*, *Highmark*, 134 S. Ct. at 1748.

In explaining this "totality of the circumstances" test, the Court noted with approval the approach to fee awards "under a similar provision in the Copyright Act." *Octane Fitness*, 134 S. Ct at 1756 n.6 (citation omitted). A district court may "consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal

components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence.'" *Id.* (quoted citation omitted). Under § 285 as well, "equitable discretion should be exercised 'in light of [these] considerations.'" *Id.* at 1756 (quoted citation omitted).

Importantly, "sanctionable conduct is not the appropriate benchmark." *Id.* at 1756. A court may award fees under § 285 even if a litigating party's "unreasonable conduct" is not "independently sanctionable." *Id.* at 1757.

In the end, the discretionary "§ 285 inquiry . . . is rooted in factual determinations." *Highmark*, 134 S. Ct. at 1749. That factual inquiry is "governed by a preponderance of the evidence standard." *Octane Fitness*, 134 S. Ct. at 1758.

*Improper Motivation*

The evidence establishes by far more than a preponderance that TechRadium has been motivated throughout by a desire to coerce nuisance settlements or unrelated business transactions rather than to succeed in the litigation.

TechRadium has not entered into a license agreement for use of its patents except to settle litigation. *See* Exhibits M and N. TechRadium's core business strategy is to sue and settle.

In the prior case, it voluntarily dismissed First Call rather than pursue its infringement claims. SOF 5. It did not appeal the adverse summary judgment ultimately granted by this Court in the prior case. It relied on its in-house counsel to prosecute these consolidated cases. TechRadium's litigation strategy depends on the costs of defending its lawsuits, not on litigation success.

In this case, TechRadium filed suit against First Call in order to coerce First Call back into negotiations over a business combination. SOF 6, 10. TechRadium filed suit against the City

13

of Friendswood in a failed attempt to bolster its argument against intradistrict transfer and to coerce a license agreement from the City. SOF 12, 13.

In each of these consolidated cases, the likely cost of defense far exceeded any amount that TechRadium could reasonably hope to recover from litigation against either defendant. *See* Exhibit A ¶ 8. Moreover, after this Court's rulings in the prior case, TechRadium could not have rationally expected to prevail in this second case, much less to have recovered any amount close to the Defendants' costs of litigation. And by using its in-house counsel rather than independent and experienced outside counsel, TechRadium was able to create an asymmetric expense calculus – avoiding its own payment of fees to outside counsel while imposing the cost of outside counsel on each Defendant. It could not have reasonably expected to prevail in the litigation; but it could have reasonably expected that the Defendants would capitulate to avoid the costs of defense, as many accused infringers had done before.

Defendants believe that the lawsuit was brought for an "improper purpose" within the meaning of Rule 11. But sanctionable conduct is not necessary for recovery under § 285. It is sufficient that TechRadium was motivated to use the lawsuit for purposes other than prevailing on the merits.

In summary, this case was "exceptional" because TechRadium brought suit for reasons other than a reasonable expectation of success. TechRadium was no doubt satisfied with using its in-house counsel as attorney of record because it is using litigation to pursue extraneous business goals, not to win the lawsuit. In the end, TechRadium's use of its in-house counsel to file and pursue the lawsuit – which is virtually unprecedented in a patent lawsuit – makes this case "exceptional" in and of itself.

14

*Frivolousness*

Defendants submit that the entire lawsuit was frivolous. Since its prior counsel had conceded, in the presence of Mr. Vetrano, that proof of infringement would be "impossible" under this Court's construction of "user," and TechRadium did not appeal that ruling in the prior case, filing this infringement suit, which depended on rejecting this Court's construction of "user," was fundamentally flawed from the outset.

In addition, TechRadium took specific positions that were frivolous, the most obvious being its dismissed allegations and claims for punitive damages and enhanced statutory damages. SOF 14-16. Its ultimate allegation that infringement was known by or obvious to First Call, SOF 17, was likewise frivolous. Its argument about "grouping information" in connection with First Call's Storm Alert function was frivolous. SOF 25.

*Objective Unreasonableness*

Defendants consider many of the other specific positions taken by TechRadium to have been frivolous. At the very least, the positions taken by TechRadium were objectively unreasonable.

It was objectively unreasonable, at the very least, for TechRadium to pursue any further infringement litigation against Fist Call after (1) its counsel admitted in the prior case that infringement would be "impossible" if "user" meant "message recipient," SOF 3; (2) this Court construed "user" to mean, in effect, "message recipient," SOF 3; (3) First Call submitted sworn and uncontested evidence that the First Call system did not allow message recipients to select grouping information,SOF 4; and (4) this Court granted summary judgment in the prior case based on its construction of "user," SOF 5.

15

After transfer of the first case from the Eastern District of Texas to this Court, it was objectively unreasonable for TechRadium to file its second suit in the Galveston Division and to oppose intradistrict transfer to this Court. SOF 8. It was manifestly unreasonable for TechRadium to sue the City, except for purposes of illegitimate coercion. SOF 12.

Both the merits of TechRadium's litigation positions and the manner in which TechRadium litigated the case were unreasonable. It was objectively unreasonable for TechRadium to withhold production of license agreements, SOF 19; to designate license agreements "Highly Confidential", SOF 20; and to seek discovery after the claims construction and summary judgment records were closed, SOF 22. If TechRadium had a serious infringement theory, it was objectively unreasonable for its counsel not to depose a First Call representative familiar with the operation of the First Call system.

It was objectively unreasonable to pursue a construction of "user" that had been rejected in the prior case and to repeat arguments in favor of that construction that had failed in the prior case. SOF 23, 24. Even setting aside the results of the prior case, it was objectively unreasonable to pursue a construction of "user" that was patently inconsistent with numerous portions of the patent specification and claims. SOF 25. It was objectively unreasonable to base its infringement theory on material in the First Call website when that material, in this Court's view, made clear that First Call did not infringe. SOF 26.

*Considerations of Compensation and Deterrence*

First Call is not a large company. From the very beginning First Call advised TechRadium that litigation would fail and was probably sanctionable. SOF 8. TechRadium proceeded with the lawsuit in defiance of First Call's legitimate cautions. Defendants defeated the infringement claims with the least possible effort and expense. It would be entirely fair for

16

First Call to be reimbursed the reasonably mitigated expense of defending this unmeritorious lawsuit.

The City of Friendswood is primarily a pawn in this litigation. It too should be reimbursed its minor additional expense in defending this lawsuit.

Considerations of deterrence are particularly important in the circumstances of this case. Patentees should be deterred from filing infringement cases in the face of defeats on identical issues in prior cases. Patentees should be deterred from using in-house counsel to pursue infringement cases; litigation for the proper purpose of recovering available relief, at least in infringement litigation, warrants the expense of independent and experienced outside counsel. Patentees should be deterred from using litigation to coerce business transactions unrelated to the merits of the patent infringement claim. Absent an award of fees, there is nothing to deter TechRadium from filing yet another infringement case against TechRadium in an effort to extort a nuisance value settlement or coerce a business transaction.

*Totality of the Circumstances*

These consolidated cases plainly "stand out from others with respect to the substantive strength of" TechRadium's litigating positions" and the unreasonable "manner in which" TechRadium litigated the case within the meaning of *Octane Fitness*. TechRadium's weak litigation positions stand out from the overwhelming majority of patent infringement and other federal lawsuits. Most plaintiffs do not lose three straight dismissal motions. TechRadium's improper motivation – to coerce extraneous business transactions or nuisance settlements or to influence the outcome of transfer motions without regard to the strength of the case – stands out from the legitimate motivation for virtually all other federal lawsuits, including the vast majority of patent infringement suits. The unreasonable manner in which TechRadium litigated the case

17

stands out from the manner in which federal lawsuits are, or at least should be, litigated. TechRadium's use of in-house counsel to pursue the case stands out, allowing TechRadium to impose the cost of defense on Defendants without incurring significant cost of its own in pursuing the case. Given the transparent lack of merit in this lawsuit, it is only fair that the costs should be imposed on TechRadium, the party who caused the expense and took repeated action to increase the expense – rather than on the non-infringing Defendants who made every effort to avoid unnecessary expense. When TechRadium pays an award of fees, it will only be paying the expense of its own lawsuit, which it should have paid in the first place, not double the expense.

Under the totality of circumstances, this Court should readily conclude as an exercise of sound discretion that the consolidated cases are "exceptional" and justify an award of fees.

Defendants Are "Prevailing Parties"

Defendants prevailed on every major and minor aspect of this lawsuit. They are "prevailing" parties within the meaning of § 285.

"Attorneys' Fees" Includes Expenses and the Cost of the Fee Motion

It is settled that the statutory phrase "attorneys' fees" encompasses all "sums that the prevailing party incurs in the preparation for and performance of legal services related to the suit." *Central Soya Co. v. Geo. A. Hormel, Inc.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) (citations omitted). The statutory phrase therefore includes necessary expenses and disbursements as well as fees expended on the § 285 issue. *Id.* at 1577-78 (citations omitted).

The Requested Awards Are "Reasonable"

Defendants mitigated the cost of defense at every turn. Defendants took minimal discovery. Defendants tried to avoid the entire expense of litigation, SOF 8, 18, and tried in vain to avoid the expense of resolving disputes that arose during the case, SOF 8, 14, 19, 20-22.

18

Defendants tried to avoid the expense of litigating claims construction. SOF 21. Defendants moved for summary judgment early in the case, Doc. 54, and secured a stay of discovery pending resolution of their motion. SOF 22. TechRadium opposed every one of these efforts to reduce expense, compelling evidence of its improper motivation.

As further explained in detail in the attached Daniel and Viada affidavits, Exhibits A and B, the amounts sought by Defendants are "reasonable" within the meaning of § 285.

## Conclusion

Defendants have proved by significantly more than a preponderance of the evidence that this case is "exceptional" within the meaning of 35 U.S.C. § 285. As permitted by § 285, this Court should exercise its discretion and award the following reasonable amounts to Defendants as prevailing parties:

First Call: $96,396.12

City of Friendswood: $16,476,00

Respectfully submitted,

/s/ B.D. Daniel
Robert David "B.D." Daniel
Federal Admission No. 1394
State Bar No. 05362200
BECK REDDEN, L.L.P.
1221 McKinney, Ste 4500
Houston, Texas  77010-2010
Telephone 713-951-3720
Facsimile:  713-951-3720
bddaniel@beckredden.com
*Attorney in Charge for FirstCall Network, Inc.*

1490.001/5506337v1

OF COUNSEL:
RYAN R. BROWN
ADMITTED PRO HAC VICE
ROEDEL, PARSONS, KOCH, BLACHE,
BALHOFF & MCCOLLISTER, A L.C.
8440 Jefferson Hwy., Suite 301
Baton Rouge, LA  70809-7652
Telephone (225) 929-7033
Facsimile (225) 928-4925

        Respectfully submitted,

        By: __/s/ Ramón G. Viada__
        Ramón G. Viada
        State Bar No. 20559350
        VIADA & STRAYER
        17 Swallow Tail Court, Suite 100
        The Woodlands, Texas 77381
        (281) 419-6338
        (281) 419-8137 (Fax)
        rayviada@viadastrayer.com

        *Attorney-in-Charge for Defendant*
        *City of Friendswood*

OF COUNSEL:
Stefanie A. Strayer
State Bar No. 24013273
VIADA & STRAYER
17 Swallow Tail Court, Suite 100
The Woodlands, Texas 77381
(281) 419-6338
(281) 419-8137 (Fax)

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that the above and foregoing has been served on all counsel of record on this the 15th day of October, 2014, via electronic filing.  Any other counsel of record will be served by facsimile transmission and first class mail.

        ___/s/ B.D. Daniel___
        Robert David "B.D." Daniel