IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TECHRADIUM, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NOS. H-13-2487, 13-2641 |
| | § | |
| FIRSTCALL NETWORK, INC., *et al*., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING
MOTION FOR AWARD OF ATTORNEYS' FEES**

The defendants, FirstCall Network, Inc. and the City of Friendswood, have moved for an award of attorneys' fees and expenses in these patent infringement cases. After construing a critical disputed claim term, the court granted the defendants' motion for summary judgment, finding that there was no infringement. (Docket Entry No. 75). The defendants argue that the cases qualify as "exceptional" under 28 U.S.C. § 285 and *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 1755-56 (2014), entitling them to their fees and expenses. The plaintiff, TechRadium, Inc., argues in response that the cases are not exceptional but does not challenge the amount of fees and expenses sought. (Docket Entry No. 77).

Based on the record,[1] the motion and response, and the applicable law, the court finds that these are exceptional cases and awards attorneys' fees and expenses in the amount of $ 96,396.12 to First Call and $16,476.00 to the City of Friendswood. The reasons are set out below.

---

[1] FirstCall and the City of Friendswood submitted billing invoices documenting the number of hours expended, the type of work performed, their hourly rates, and evidence that they contend shows that these cases are exceptional. (*See* Docket Entry No. 75 & Exs.).

1

**I.      Background**

    **A.      The Prior Litigation**

TechRadium included FirstCall in the group of defendants sued in *TechRadium v. Edulink Systems, Inc., et al.*, Civil Action No. H-10-1887 (the "*Edulink*" case). The patents at issue were U.S. Patent No. 7,496,183 (the '183 Patent) and U.S. Patent No. 7,519,165 (the '165 Patent), which claimed a method for providing digital notification to, and receiving responses from, a large number of users. The defendants developed and marketed digital mass-notification systems. The case was transferred here from the Eastern District of Texas and pursued by outside counsel for TechRadium.

The parties vigorously disputed the construction of several claims, including the term "user." TechRadium sought to define the term to include anyone using the system in any way and in any capacity, including as a "message recipient to receive a message" and as a person using the system to initiate transmission of a message. The defendants defined "user" as limited to message recipients. The definition did not include administrators unless they were also message recipients. The court held a hearing, considered an extensive record, and concluded that "user" was "an intended recipient of a message sent by an administrator." The court clearly rejected TechRadium's proposed definition and gave a detailed analysis explaining why. (No. H-10-1887, Docket Entry No. 251).

TechRadium's in-house counsel, Mr. Vetrano, attended the hearing that preceded the court's decision. The parties presented argument at the hearing. TechRadium's outside counsel, Mr. Staples, conceded that if the defendants' proposed construction prevailed, that would "make it virtually impossible for any useful mass notification system to infringe the patent." (Docket Entry No. 75, Ex. F, p. 17, lines 4-8; *see also* No. H-10-1887, Docket Entry No. 259-12, p. 17, lines 4-8).

After the claim-construction opinion issued, all the defendants in *Edulink* moved for summary judgment of noninfringement. FirstCall argued that the court's construction meant that the FirstCall system could not permit "user selected grouping information," an essential element of the claims TechRadium asserted. While that motion was pending, TechRadium agreed to dismiss FirstCall from the *Edulink* case so the parties could pursue a business resolution. All defendants other than Edulink settled, in general by paying TechRadium for a license. Edulink prevailed in its summary judgment motion. The court again construed "user" to mean intended message recipients, who do not perform the grouping function that was essential to TechRadium's infringement claim. *See TechRadium, Inc. v. Edulink Sys., Inc.*, No. H–10–1887, 2013 WL 1855859 (S.D. Tex. May 1, 2013). TechRadium did not appeal.

TechRadium and FirstCall continued negotiating. According to FirstCall's affidavit in this case, TechRadium threatened to file another lawsuit if First Call did not agree to a business combination. (Docket Entry No. 75, Ex. J). FirstCall and TechRadium could not agree on the payment terms for a business combination, and negotiations ended. This litigation followed.

### B. The Present Litigation

TechRadium sued FirstCall and the City of Friendswood, alleging that FirstCall sold products to the City of Friendswood incorporating TechRadium's patented technology without a license or TechRadium's permission. The allegedly infringed patent was TechRadium's U.S. Patent No. 7,773,729 (the '729 Patent), which claims a device for providing digital notification to, and receiving responses from, a large number of users. The City of Friendswood bought and used FirstCall's digital mass-notification messaging and weather-alert systems.

TechRadium sued FirstCall in Galveston County, despite the fact that TechRadium is located

in Houston. FirstCall made it clear from the outset that it viewed this second lawsuit as without basis and sanctionable. TechRadium in turn made it clear that the case could be resolved if FirstCall resumed negotiating toward a business combination. (Joint Scheduling/Docket Control Order Report, Docket Entry No. 16, ¶ 15). TechRadium then filed suit against the City of Friendswood, which is located in Galveston County. The defendants moved to transfer both cases to the Houston Division. The Galveston federal judge granted the transfer motion over TechRadium's opposition, and the cases were transferred to Houston and consolidated before this court. (Docket Entry No. 37). Both cases were filed and pursued by TechRadium's in-house counsel, Mr. Vetrano.

TechRadium amended its complaint to seek enhanced damages under the Patent Act, 35 U.S.C. § 284. FirstCall moved to dismiss the damages claim, which the court granted. TechRadium repleaded that same claim, and FirstCall again moved to dismiss. (Docket Entry No. 37). The court granted the motion with leave to amend, but only on a good-cause showing. (Docket Entry No. 50). A third amended complaint alleged that First Call knew or "obviously should have known, that its acts infringed a valid patent," (Docket Entry No. 53, ¶ 14). FirstCall points out that this allegation was undermined by TechRadium's acknowledgment, before and after this litigation, that its infringement contentions required adopting its broad proposed construction of "user" to include "administrator," a construction this court had rejected in the case involving the related patents.

TechRadium took certain litigation positions that required the defendants to seek court involvement. TechRadium refused to produce its license agreements except under a highly restrictive "Highly Confidential" designation, a restriction that this court rejected as unjustified in a hearing FirstCall had to seek. TechRadium also insisted on broad discovery before threshold claim construction, a demand this court also rejected in a hearing. After these matters were resolved, the

defendants moved for summary judgment of noninfringement, arguing that this court's prior construction of related TechRadium patent claim terms in the *Edulink* case established that FirstCall's messaging and weather-alert systems could not perform all the claimed steps of the '729 Patent. (Docket Entry No. 54). The defendants argued that the FirstCall systems do not have "user selected grouping information" and that "user" has the same meaning in the '729 Patent that this court found in construing the same term in the two related patents at issue in the *Edulink* case. TechRadium argued that the court should construe the terms "user" and "administrator" in the '729 Patent more broadly than it construed the same terms in the related TechRadium patents in the *Edulink* case. (Docket Entry No. 57). The court held a hearing under *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), at which the parties presented arguments in support of their competing constructions.

TechRadium argued that the term "user" should be construed more broadly than in the parent patents at issue in *Edulink*, to include all administrators. The defendants argued that the court's construction of the very similar terms in *Edulink* should apply so the term include only those administrators who are also intended message recipients.

The court construed the disputed term "user" to mean "an intended recipient of a message sent by an administrator," the same construction it had given to the term in the *Edulink* case. As was true in the *Edulink* case, this construction defeated TechRadium's infringement claims, which depended on the court construing "user" to include an "administrator" initiating the transmission of a message—a message sender—as opposed to limiting "user" to intended message recipients. The court relied on its construction in *Edulink* of the similar claim language in TechRadium's '183 and '165 Patents, both child patents of the '729 Patent. *See TechRadium, Inc. v. Edulink Sys.*, No.

H–10–1887, 2012 U.S. Dist. LEXIS 189753, at *1 (S.D. Tex. July 16, 2012). The court noted that all three patents "claim[ed] the benefit" of the '389 parent Patent. '729 Patent, col. 1, l. 7; '165 Patent, col. 11, l. 9; '183 Patent, col. 1, l. 8. The court concluded that although the language used in the '165 and '183 Patents differed somewhat from the language used in the '729 Patent, there were no material differences in the way "users" and "administrators" were described across the patents. *See TechRadium, Inc. v. FirstCall Network, Inc.*, No. H–13–2487, — F. Supp. 3d —, 2014 WL 4851947, at *8 (S.D. Tex. Sept. 29, 2014). Although this court's prior construction of the '183 and '165 Patents did not control the construction of the '729 Patent in the sense of preclusion principles, the relation between the patent at issue in these consolidated cases and the patents examined in *Edulink* weighed heavily in favor of consistently construing the same terms across the patents. *See id.* at *8-9.

The court rejected all of TechRadium's arguments for a different construction. The analysis was neither complex nor difficult. Across the three patents, the claims and specifications supported distinguishing between "users" and "administrators." Each served a clearly different function. An administrator uses the digital mass-notification system to initiate sending a message to intended recipients. A "user" is an intended recipient of the transmitted messages. Though an "administrator" who is an intended recipient of a transmitted message is also a "user," that "administrator" is a "user" only because he is an intended recipient, not because he initiates sending the message.

Claim 1 in the '165, '183, and '729 Patents referred to "user selected grouping information comprising at least one group associated with each user on the network." '729 Patent, col. 8, ll. 57–59; '183 Patent, col. 12, ll. 23–24; '165 Patent, col. 11, ll. 48–49. Claim 1 in the '729 Patent

described a "system for preparing and transmitting at least one message from an administrator using at least one processor to at least one user on a network, wherein each user of the network has at least one user contact device." '729 Patent, col. 8, ll. 45–50. Administrators do not have user-contact devices, as Figure 1 of the embodiment confirms. (Docket Entry No. 40, Ex. 1 at 3). The claims and specifications consistently associate a "user" with a "user contact device" to which the administrator sends a message and through which the user receives the message. This supported construing "user" to cover administrators only when they were also intended message-recipients, not merely message-senders.

The court rejected TechRadium's argument that the statement in the '729 Patent specifications that "[t]he users can be individuals or entities that can receive a message, send a message, respond to a message . . . or any combinations of these activities" supported construing "user" to cover anyone who sends a message. '729 Patent, col. 4, ll. 14–18; (Docket Entry No. 57 at 14 (emphasis removed)). The court found it clear that a message sender could be a "user" only if that person or entity was also an intended recipient of that message. If the administrator initiated sending the message but was not among the intended recipients, the administrator was not a "user."

The court also rejected TechRadium's argument that the specifications supported its proposed construction because "users" receiving a message could use the claimed method to respond to that message. '729 Patent, col. 4, l. 15. TechRadium also pointed to the specification's teaching that users could access the system to re-broadcast a prior message or reply to other messages received from an administrator. '729 Patent, col. 8, ll. 28–34. The court found that these capabilities did not support construing "user" to encompass all those who send messages to user-contact devices. Instead, these capabilities were consistent with construing "user" to mean intended

message recipients, so that a user had to first receive a message from an administrator before a response to it could be sent.

TechRadium relied on Claims 3 and 4 to argue that "user" encompasses the administrator who sends the messages. But Claims 3 and 4 both depended on the construction of Claim 1, which differentiated clearly between the administrator who sends a message and the users who receive it on their user-contact devices. '729 Patent, col. 9, ll. 11–24.

TechRadium also argued that the "customer service interface" in Claim 3 had a 411 and 911 "database connection for users of the network," and that only an administrator with high-level privileges would have access to these databases. (Docket Entry No. 64 at 35). But there was no evidence supporting TechRadium's argument that the "customer service database" of Claim 3 was connected to the main "dynamic information database" required by Claim 1.b, or that users could modify or access data in the "dynamic information database" through the "customer service database." '729 Patent, col. 9, ll. 11–19.

The court also rejected TechRadium's argument that because Claim 4 of the '729 Patent claims "an advertising module [that] is in communication with the administrator interface enabling individual advertisers to place ads in conjunction with the message," '729 Patent, col. 9, ll. 21–24, that supported construing "user" to include an entity implementing the notification system. The problem was that while the specification referred to an advertising module, stating that it is "usable to hold . . . banner ads of a[n] advertiser and place the ads before or after a message as a method to enable users to self fund implementation of the system," '729 Patent, col. 5, ll. 8–12, the specifications for the advertising module also stated that "[t]he advertising module can be used to insert header and footer files in the message to personalize the message to the group of users to

whom the message is addressed." '729 Patent, col. 5, ll. 13–15. The isolated use of "users" in a broader context in Claims 3 and 4 did not change the construction of Claim 1, which clearly differentiated between users and the administrators who send the users messages.

The claims and specifications revealed that though a "user" may also, in some circumstances, send a message or respond to a message, a "user" is always the intended recipient of a message. The court rejected TechRadium's broader definition and construed "user" as "an intended recipient of a message sent by an administrator." And the claim terms in Claims 5 and 6 of the '729 Patent, which TechRadium did not assert and which provided for a system that, if the administrator had a language converter included in the transmission, the administrator's message could be translated into a language selected by the message recipient, further supported the defendants' rather than TechRadium's construction of "user."

As a result of the analysis, the court readily concluded that FirstCall did not infringe TechRadium's '729 Patent. The court granted the defendants' motion for summary judgment. (Docket Entry No. 74).

This motion for fees and expenses followed.

## III.    The Legal Standards

Title 35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court recently rejected what it characterized as an overly demanding and rigid reading of "exceptional case" and instead held that, under § 285, "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health*

*& Fitness, Inc.*, 134 S. Ct. 1749, 1756, 1758 (2014). "District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*  In exercising that discretion, courts may consider, among other factors, "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6. (citation omitted).  The Court held that a prevailing party need only establish its entitlement to fees under § 285 by a preponderance of the evidence, not by clear and convincing evidence.  *Id.* at 1758.

If "a party has set forth some good faith argument in favor of its position, it will generally not be found to have advanced 'exceptionally meritless' claims." *Small v. Implant Direct Mfg. LLC*, No. 06 Civ. 683(NRB), 2014 WL 5463621, at *3 (S.D.N.Y. Oct. 23, 2014).  Courts have awarded attorneys' fees under § 285 when a party advances arguments that are particularly weak and lack support in the record or seek only to relitigate issues the court has already decided.  *See Cognex Corp. v. Microscan Sys., Inc.,* No. 13–CV–2027 JSR, 2014 WL 2989975, at *4 (S.D.N.Y. June 30, 2014) (criticizing the plaintiff for posttrial motions that simply sought to relitigate issues decided during trial and awarding fees at least as to those motions); *Intex Recreation Corp. v. Team Worldwide Corp.*, No. CV 04-1785 (PLF), — F. Supp. 3d —, 2015 WL 135532, at *3 (D.D.C. Jan. 9, 2015) (awarding attorney's fees because the patentee "advanced flawed, nonsensical, and baseless arguments, which lacked factual support, seeking only to re-litigate [the] Court's [previous] construction of the term 'socket'"); *Precision Links Inc. v. USA Products Group, Inc.*, No. 08–576, 2014 WL 2861759, at *3 (W.D.N.C. June 24, 2014) (criticizing the plaintiff for seeking a preliminary injunction based in large part on a previously rejected theory of liability and for filing

10

frivolous postdismissal motions); *Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (collecting cases); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 13 Civ. 3599 DLC, 2014 WL 2440867, at *6-7 (S.D.N.Y. May 30, 2014) (awarding fees after granting judgment on the pleadings because basic investigation would have revealed the defendant's noninfringment); *Kilopass Tech. Inc. v. Sidense Corp.*, C 10–02066 SI, 2014 WL 3956703, at *13-14 (N.D. Cal. Aug. 12, 2014) (awarding fees when the plaintiff's investigation consisted of getting one legal opinion of noninfringement and another incomplete opinion).

Mere assertions that a party's arguments were without merit generally do not make a case "exceptional." The factors courts look to include whether a party knew or willfully ignored evidence of the claims' meritlessness; whether the meritlessness could have been discovered by basic pretrial investigation; or whether the meritlessness was made clear early in the litigation. If a party has set forth some good-faith argument in favor of its position, it will generally not be found to have advanced "exceptionally meritless" claims. *See, e.g., EON Corp. IP Holdings LLC v. Cisco Sys. Inc*, 12–CV–01011–JST, 2014 WL 3726170 (N.D. Cal. July 25, 2014) (even when the plaintiff's argument was "quite stretched" and its conduct "difficult to explain," the court could not "quite conclude that *no* reasonable patentee could see an opening . . . through which the argument could be squeezed"); *Gametek*, 2014 WL 4351414, at *3 (conceding that the plaintiff's briefing, which "consisted of granular parsing of the claimed steps rather than any substantive explanation of how [the invention] differed from the underlying abstract idea," was inadequate but finding that it "did not . . . descend to the level of frivolous argument or objective unreasonableness").

The cases show that the most commonly cited ways to establish exceptionality include

evidence showing that the plaintiff failed to conduct an adequate prefiling investigation or to exercise due diligence before filing suit; the plaintiff knew or should have known that its claim was meritless or lacked substantive strength; the plaintiff initiated the litigation to extract settlements from defendants to avoid costly litigation; the plaintiff proceeded in bad faith; or litigation misconduct. In this instance, as explained in detail below, at least two of the factors are present. TechRadium knew or should have known that its claim was meritless or lacked substantive strength and TechRadium essentially relitigated arguments the court had previously clearly rejected. The record also suggests a pattern of suing for settlements from defendants who want to avoid costly litigation and litigation obstructiveness that added to the cost of defense. All these factors support finding these consolidated cases "exceptional."

## IV. Analysis

### A. These Consolidated Cases Are Exceptional

The infringement claims against FirstCall and the City of Friendswood depended on a claim construction that the court clearly rejected in prior litigation on closely related patents. TechRadium's in-house lawyer knew the significance of the court's claim construction. He was in the courtroom when the outside lawyer retained in the *Edulink* case admitted that the construction of "user" that the court adopted would essentially defeat any showing of infringement in cases such as these against FirstCall and the City of Friendswood.

This court's opinion in the present case decisively rejected TechRadium's arguments that the slight wording differences between the patents at issue in the *Edulink* case and the '729 Patent at issue here led to a different construction of the critical term, "user." TechRadium justifies the arguments it advanced here on the wording differences, asserting that the prior construction in

*Edulink* was not "controlling." The prior construction was not preclusive, but it certainly was clear. It decisively rejected the claim construction TechRadium advocates, on grounds that apply equally to the '729 Patent. The court reached the same result in ruling on the summary judgment motion Edulink pursued after the other defendants settled. TechRadium did not challenge either the claim-construction or the summary judgment ruling in *Edulink* by appeal or otherwise.

TechRadium's arguments for a different construction in the present cases were wholly unsubstantial and without merit. This factor strongly supports finding these consolidated cases exceptional. It was merely a vehicle to relitigate prior, clearly rejected, positions.

The defendants also point to the fact that in *Edulink*, TechRadium dropped claims against defendants once it had obtained a settlement through license agreement. TechRadium dismissed its claim against FirstCall in the *Edulink* case to pursue a business resolution. FirstCall points to TechRadium's threats to resue FirstCall if it refused to agree to a business combination. In response, TechRadium merely points to a policy embodied in the Federal Rules of Civil Procedure to encourage early settlement. *See* Fed. R. Civ. P. 16(a)(1), (5). TechRadium's argument proves far too much. The Rules certainly encourage settlements of cases on terms that reflect the strength and weakness of the claims and defenses. But the Rules emphatically do not encourage filing objectively unreasonable actions in order to extract settlements to avoid litigation costs. To the contrary, the Rules clearly prohibit these practices and provide deterrents and remedies. *See, e.g.*, Fed. R. Civ. P. 11(c) (courts may impose sanctions for filings that are motivated by improper purpose; present legal contentions not warranted by existing law or nonfrivolous argument for changing existing law; or advance or deny factual contentions without evidentiary support or the likelihood of obtaining evidentiary support after a reasonable opportunity for further investigation

or discovery); 26(g) (courts may impose sanctions for similar violations in the context of discovery requests, responses, and objections); 37 (same). And TechRadium does not attempt to justify the licenses it obtained from other defendants in *Edulink* or explain how the amounts related to the costs of defense.

The case of *Summit Data Sys., LLC v. EMC Corp.*, No. CV 10-749-GMS, 2014 WL 4955689, at *4-5 (D. Del. Sept. 25, 2014), is instructive. The court found that Summit's practice of extracting settlements for much less than what the case would cost to litigate supported finding exceptionality. The court noted that the high costs for defendants to defend and the burden of complying with discovery supported the finding. In *Summit*, as here, the plaintiff delayed producing its licensing agreements. *Id*. In the present case, as in *Summit*, "'the appetite for licensing revenue cannot overpower a litigant's and its counsel's obligation to file cases reasonably based in law and fact and to litigate those cases in good faith.'" *Id*. at *4 (quoting *Eon–Net LP v. Flagstar Bancorp*, 653 F.2d 1314, 1328 (Fed. Cir. 2011)). And it appears that TechRadium sued FirstCall only after it could not achieve the business combination it dismissed the first case to pursue, and in the face of warnings that any renewed litigation was without merit. This factor supports finding an exceptional case.

Finally, the litigation positions TechRadium took also suggests efforts to avoid the prior litigation effects and to increase the defense costs for FirstCall and the City of Friendswood. TechRadium sued FirstCall in the Galveston Division. TechRadium contends it did so because the City of Friendswood is located in the Galveston Division, and FirstCall's contract with the City of Friendswood had a forum-selection clause providing that "[v]enue for any dispute shall lie in Galveston County, Texas." (Docket Entry No. 77, at 14; *see also* Docket Entry No. 21, Ex. 1, ¶ 13).

But the venue statute, 28 U.S.C. § 1391, is "based on districts, not divisions." (Docket Entry No. 32, at 6); *see also Perry v. Autocraft Invs., Inc.*, No. 3:13-cv-00106, 2013 WL 3338580, at *2 (S.D. Tex. July 2, 2013). And the City of Friendswood, which "lies between the Galveston and Houston Divisions," supported consolidating the cases and moving them to Houston to be transferred to the court already familiar with very similar claims. (Docket Entry No. 32, at 10). In any event, TechRadium was not a signatory to the contract containing the forum-selection clause and its patent infringement claims did not depend on the contract. Nor was TechRadium "closely related" to the signatories, the City of Friendswood and FirstCall. *See Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013) (holding that "a non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory"); *Alternative Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*, Civ. SA. 05CA0172-XR, 2005 WL 1862631 at *15 (W.D. Tex. July 8, 2005) (a forum-selection clause may be enforced by a non-signatory "when a signatory to a written agreement must rely on the terms of the written agreement in asserting its claims against the nonsignatory" (citing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000)).

When the defendants sought to transfer the cases to Houston, TechRadium opposed transfer, requiring the defendants to file motions. After the cases were transferred and consolidated, TechRadium pursued pleading amendments alleging a basis for statutory enhanced damages, amendments that the court rejected twice in granting motions to dismiss that the defendants filed. TechRadium insisted on discovery despite the threshold motions that could be resolved without the need for any of the discovery. Again, the defendants had to seek a hearing to resolve the issue. TechRadium delayed producing or refused to produce certain documents, again requiring a hearing.

These positions suggest that TechRadium's litigation conduct was in part designed to increase the cost to the defendants and the pressure to settle.

Although the record may well support a bad-faith finding, that is not necessary to find an exceptional case. It is clear that TechRadium was objectively unreasonable in bringing this lawsuit against First Call and the City of Friendswood such a short time after losing the same claim-construction arguments it made in the *Edulink* case, arguments clearly essential to its success in this lawsuit as well. The court is convinced that an award of attorneys' fees in these consolidated cases is necessary to deter this sort of wasteful litigation in the future.

### B. The Amount of Fees Requested

Courts apply a well-established two-step process to calculate attorneys' fee awards. *See Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). "First, the court calculates a 'lodestar' by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers." *Id.* (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995)). In so doing, the court considers whether the attorneys demonstrated adequate billing judgment by writing "off unproductive, excessive of redundant hours." *Walker v. U.S. Dep't of Housing & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996).

Second, the court considers whether the circumstances of the particular case warrant an upward or downward lodestar adjustment. *Migis*, 135 F.3d at 1047. In making any lodestar adjustment, the court looks to twelve *Johnson* factors: "(1) the time and labor required for the litigation; (2) the novelty and difficulty of the questions presented; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations

imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). "[T]he court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Id.* When, as here, the fee amount is uncontested, the court should still consider the *Johnson* factors and independently examine the reasonableness of the fee. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010); *see also Williams v. Bally's Louisiana, Inc.*, No 5-5020 (LMA), 2007 WL 2042443 (E.D. La. July 12, 2007).

     B.D. Daniels, lead counsel for FirstCall, and Ramon G. Viada III, counsel for the City of Friendswood, submitted affidavits with accompanying billing invoices reflecting their hourly rates, hours expended, and the type of legal work provided. (Docket Entry Nos. 75-1; 75-3). TechRadium has not challenged the hourly rates or the number of hours expended. FirstCall and the City of Friendswood have demonstrated their efforts to hold their time, work, and fees to those required for an efficient, swift resolution. Counsel for FirstCall charged his customary rate—$450 per hour—for attorney time, a reasonable rate given the lawyer's experience, expertise, and the type of case. (Docket Entry No. 75-1). Counsel for the City of Friendswood charged $215 to $230 per hour for his time and $95 to $105 per hour for his legal assistant's time, both well within a customary and reasonable range for such a client. (Docket Entry No. 75-3). "When an attorney's customary billing rate is the rate at which the attorney requests the lodestar be computed and that rate is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to

17

be allowed. When that rate is not contested, it is prima facie reasonable." *Louisiana Power & Light*, 50 F.3d at 328 (citing *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990); *Islamic Ctr. v. City of Starkville*, 876 F.2d 465, 468 (5th Cir. 1989)). The hourly rates are reasonable, and the hours expended are reasonable. *See Migis*, 135 F.3d at 1047. Defense counsel also demonstrated billing judgment by reducing time spent traveling and writing off time spent on clerical tasks. (Docket Entry No. 75-3). The court has considered the *Johnson* factors and finds that no further departure, upward or downward, is warranted. *See Johnson*, 488 F.2d at 717-19.

## V.      Conclusion

The court grants the motion for an award of fees and expenses, and awards First Call its fees and expenses in the amount of $96,396.12 and the City of Friendswood its fees and expenses in the amount of $16,476.00. Final judgment is entered by separate order.

SIGNED on February 27, 2015, at Houston, Texas.

                                                                _____
                                                                            Lee H. Rosenthal
                                                                      United States District Judge